# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PG PUBLISHING, INC., d/b/a PITTSBURGH POST-GAZETTE, <br><br> Plaintiff, <br><br> v. <br><br> THE NEWSPAPER GUILD OF PITTSBURGH, COMMUNICATION WORKERS OF AMERICA, AFL-CIO LOCAL 38061, <br><br> Defendant. | Civil Action No. _____ <br><br> *Electronically Filed* |

## COMPLAINT TO VACATE ARBITRATION AWARD

Plaintiff PG Publishing Co., Inc. d/b/a Pittsburgh Post-Gazette ("Post-Gazette") files this Complaint against defendant The Newspaper Guild of Pittsburgh, Communications Workers of America, AFL-CIO Local 38601 ("Union") to vacate the decision of an arbitrator, stating as follows.

## Parties

1. The Post-Gazette is a Pennsylvania corporation engaged in the business of publishing *The Pittsburgh Post-Gazette*, a newspaper. Its place of business is in Pittsburgh, Pennsylvania and it is an "employer" in "an industry affecting commerce" as defined in 29 U.S.C. § 152(2) and (7), and 29 U.S.C. § 185(a).

2. The Newspaper Guild of Pittsburgh, Communications Workers of America, AFL-CIO, Local 38061 is a "labor organization" within the meaning of 29 U.S.C. § 152(5), representing employees in an industry affecting commerce within the meaning of 29 U.S.C. § 185(a).

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 by virtue of 29 U.S.C. § 185 and the Federal Arbitration Act, 9 U.S.C. § 10 ("FAA").

4. Venue is proper in this judicial district pursuant to both 28 U.S.C. § 1391(b)(1) because the Union resides, exists and operates in the Commonwealth of Pennsylvania in which this district is located, and 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to this case occurred in this district.

**Factual Background**

5. The Post-Gazette and the Union were parties to a collective bargaining agreement ("Agreement"), effective from November 7, 2014 through its expiration on March 31, 2017.  A true and accurate copy of the Agreement is attached hereto and made a part hereof as Exhibit A.

6. The terms of the Agreement remain in effect due to a contractual "evergreen" provision, which is Article XXIII of the Agreement.

7. The Agreement provided that, effective January 1, 2015, health care coverage for employees represented by the Union would be provided through the Western Pennsylvania Teamsters and Employers Welfare Fund ("Fund"), to which the Post-Gazette would make contributions.

8. The Fund is an "employee welfare benefit plan" as that term is defined in Section 3(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(l).

9. The Fund is also a "Taft-Hartley" multiemployer welfare benefit fund, subject to the provisions of Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186.

10. The Agreement provided for specific contribution rates to be paid by the Post-Gazette to the Fund in 2015, 2016 and 2017. When the Post-Gazette and the Union negotiated the Agreement, they negotiated contribution rate increases only for these specific years and not for any years after 2017.

11. In this regard, Article XX, Section 3A of the Agreement (Exhibit A) includes the following pertinent health care provision:

   a. Effective January 1, 2015, all eligible bargaining unit employees will participate in the Fund. Participation in the Fund is limited to employees averaging annually more than 30 hours per week.

   b. The required Post-Gazette contributions for the calendar year 2015 will be $1,229 per month for each participating full-time bargaining unit employee (regardless of family size) and regardless of the option chosen.

   c. Post-Gazette contributions for 2016 and 2017 will not exceed a 5.0% annual increase above the $1,229 per month set forth above for calendar year 2015. Any such increases must be based upon the plan design effective January 1, 2015. Post-Gazette will receive from the Fund at least 60 days' notice of any such annual contribution increase prior to January 1. Increases in excess of 5% will be the responsibility of the bargaining unit members via direct billings from the Fund. If direct billing is not available, Post-Gazette will only assume responsibility for any withholding of any additional amounts after receiving the expressed written consent of each member and will not assume any other responsibility for collection of any other amounts, or be liable for any other payment to the Fund, other than as stated above.

12. The Agreement contains no provision for contribution rate increases to the Fund for any year after 2017. To the contrary, the Agreement states that Post-Gazette will not "be liable for any other payment to the Fund" other than the increases as limited for 2016 and 2017. (Ex. A, Article XX, Section 3A(3)).

13. In 2015, the Post-Gazette paid the required $1,229.00 per month contribution rate to the Fund for each eligible employee.

14. For 2016, the Fund requested a 5.9 percent contribution rate increase. The Post-Gazette limited its increase to 5 percent ($1,290.45 per employee per month) in accordance with the Agreement. At the Post-Gazette's and the Union's request, the Fund reduced employees' benefits by increasing deductibles so the employees would not have to pay their .9% portion of the premium increase in 2016.

15. For 2017, the Fund requested and the Post-Gazette granted a 5 percent increase to $1,354.97 per employee per month.

16. In Fall 2017, the Fund announced its annual contribution rate increase for January 2018, which was 5 percent. The Post–Gazette refused to pay that increase.

17. On December 24, 2018, the Union filed a grievance under the Agreement, claiming that the Post-Gazette was require to increase it contributions to the Fund for years after 2017 as necessary to maintain existing benefit levels because the Agreement did not include a cap on contribution rates after 2017.

18. The Post-Gazette informed the Fund and the Union that it had no contractual obligation to contribute increased amounts to the Fund after 2017 and that its sole obligation under the Agreement was to continue contributions to the Fund at the 2017 level.

19. The Post-Gazette and the Union reached no agreement on health care contribution rates to the Fund. The Post-Gazette has continued to make contributions to the Fund at the 2017 level of $1,354.97 per employee per month and has not increased contribution rates above this level.

20. On January 5, 2018, the Union filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), alleging that the Post-Gazette's refusal to pay a 5 percent increase in its contribution to the Fund for 2018 was an unlawful unilateral change, violating Sections 8(a)(5) and (1) of the National Labor Relations Act ("Act").

21. The General Counsel of the NLRB issued a complaint with respect to the Union's unfair labor practice charge, a hearing was conducted on August 21, 2018, and Administrative Law Judge David I. Goldman found that the Post-Gazette unlawfully discontinued contribution increases to the Fund causing a reduction in employee benefits.

22. The Post-Gazette sought review of the Administrative Law Judge's decision before the NLRB. On August 22, 2019, in *PG Publishing Co., Inc. d/b/a Pittsburgh Post-Gazette and Newspaper Guild of Pittsburgh, a/w Communications Workers of America, AFL-CIO, et al*, 368 NLRB No. 41 (Aug. 22, 2019), a three-member panel of the NLRB unanimously ruled that the Post-Gazette had no contractual obligation to increase contribution rates after 2017 for the Union ("NLRB decision"). A copy of that NLRB decision is attached hereto and made a part hereof as Exhibit B.

23. In pertinent part, the NLRB decision reads:

> We first find that the [Post-Gazette] did not abrogate any contractual duty to increase Fund contributions for [the Union] and Operating Engineers unit employees after 2017. The continuing agreements covering these units established a baseline contribution for 2015 and required the [Post-Gazette] to pay contributions increases for 2016 and 2017 only. They made no provision for any additional increases in subsequent years. Thus, the [Post-Gazette] was not obligated to comply with the Fund's contribution-increase request for 2018.

(Ex. B, p. 3)

24. The Union did not seek review of the NLRB decision.

25. The Union's December 24, 2018 grievance was arbitrated by the parties on October 28, 2019 before Arbitrator Jay Nadelbach ("Arbitrator").

26. During the arbitration hearing, the Post-Gazette submitted facts and argument that Section 302 of the LMRA restricted the Arbitrator's ability to issue an award contrary to the LMRA.

27. The Post-Gazette submitted a post-arbitration hearing brief setting forth facts and argument that Section 302 of the LMRA restricted the Arbitrator's ability to issue an award contrary to the LMRA.

28. On December 30, 2019, the Arbitrator issued his tentative decision and on January 21, 2020, the Arbitrator filed his full Award in *Newspaper Guild of Pittsburgh, Local 38061, Communications Workers of America, AFL-CIO,* FMCS Case No. 190201-03796 (Jan. 21, 2020) upholding the grievance ("Award"). A copy of the Award is attached hereto and made a part hereof as Exhibit C.

29. The Arbitrator's Award found that the Post-Gazette violated the terms of the Agreement by failing to pay after 2017 the amount necessary to maintain the specific health insurance benefit levels set forth in the Agreement, subject to and until a new collective bargaining agreement is negotiated and reached by the parties. In relevant part, the Award states:

> ... the [Post-Gazette] ... must continue to honor its contractual commitment and pay up to maintain the Exhibit B benefits, as written in the parties' agreement, until and unless changed in future negotiations.

and

> 3) The [Post-Gazette] is directed to pay the amount necessary to maintain the specific health insurance benefit levels set forth therein (ie., all increases that may be required to keep the contractual level of benefits), subject to and until a new collective bargaining agreement is negotiated and reached between the parties.

6

(Ex. C, pp. 19, 20).

## Count I

### Violation of Public Policy – Conflict with NLRB Decision

30. The Post-Gazette repeats and realleges paragraphs 1-29.

31. The Act is an explicit, well-defined, and dominant public policy.

32. An arbitration award contrary to the Act violates public policy.

33. The NLRB's decision and the Award are directly contradictory. The NLRB decision found that the Post-Gazette had no contractual obligation to increase health care contribution rates to the Fund after 2017 and the Award found that the Post-Gazette was contractually obligated to increase its health care contributions to the Fund after 2017 in order to maintain health care benefit levels.

34. The NLRB decision must take precedence over the Award because under the Supremacy Clause, NLRB decisions take precedence over contrary arbitration awards.

## Count II

### The NLRB Decision Collaterally Estopped Arbitrator Nadelbach

35. The Post–Gazette repeats and realleges paragraphs 1-34.

36. This Court has the power under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"), to enforce and give effect to the findings of the NLRB through the doctrine of collateral estoppel.

37. Even though this is an action under Section 301, and the NLRB's decision involved unfair labor practice issues, collateral estoppel may be applied to similar issues in the two cases.

38. The proceedings in the NLRB case before Administrative Law Judge David I. Goldman and the NLRB complied with judicial standards of substantive and procedural due process.

39. The issue of whether the Post–Gazette was contractually obligated to increase its health care contributions to the Fund after 2017 was squarely before both the NLRB and Arbitrator Nadelbach.

40. The NLRB's decision that the Post-Gazette was not contractually obligated to increase its health care contributions to the Fund after 2017 had collateral estoppel effect and precluded Arbitrator Nadelbach from finding to the contrary.

## Count III

Violation of Public Policy – The Award Requires the Post–Gazette
to Violate LMRA Section 302

41. The Post-Gazette repeats and realleges paragraphs 1- 40.

42. Section 302(a) of the LMRA, 29 U.S.C. § 186(a), prohibits payments of value from an employer to a labor organization.

43. Section 302(c) of the LMRA, 29 U.S.C. § 186(c), contains exceptions to the prohibition in Section 302(a), one of which allows payments to a multi-employer health and welfare fund, but only in certain specific circumstances.

44. Under Section 302(c)(5) and its proviso (B) of the LMRA, 29 U.S.C. § 186(c)(5) and (c)(5)(B), payments by an employer may be made to a multi-employer trust fund equally administered by both the employer and the union, but the receipt of payments by a multi-employer trust fund is forbidden unless "the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally

represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon …."

45. Section 302 of the LMRA sets forth an explicit, well-defined and dominant public policy.

46. An arbitration award contrary to Section 302 of the LMRA violates public policy.

47. For the Fund to increase health care contribution rates for the Post-Gazette for 2018 or subsequent years, Section 302 of the LMRA requires a written agreement with the Post-Gazette, specifying in detail the basis on which the increased contributions are to be made.

48. The Agreement includes no written provision setting forth the detailed basis for the Fund to increase contribution rates after 2017.

49. The trustees of the Fund may not unilaterally increase rates without the agreement of the Post-Gazette.

50. There is no "savings" clause in the Agreement authorizing the Fund to increase contribution rates after 2017.

51. The Post-Gazette is not bound by and has not agreed to any trust agreement, participation agreement, or subscription agreement authorizing the Fund to increase contribution rates after 2017.

52. The Arbitrator's Award directed the Post-Gazette "to pay the amount necessary to maintain the specific health insurance benefit levels set forth therein (ie., all increases that may be required to keep the contractual level of benefits), subject to and until a new collective bargaining agreement is negotiated and reached between the parties."  (Ex. C, p. 20).

53. By requiring the Post-Gazette to increase its contributions to the Fund for years after 2017 and imposing a prospective financial obligation on the Post-Gazette without a written

agreement setting forth a detailed basis for such increases, the Award requires the Post-Gazette to violate the express proscriptions of Section 302 of the LMRA.

54. The Arbitrator's Award must be vacated because it violates Section 302 of the LMRA and public policy.

## Count IV

Violation of the FAA – The Award is in Manifest Disregard of the Law
Because it Requires the Post-Gazette to Violate LMRA Section 302

55. The Post-Gazette repeats and realleges paragraphs 1-54.

56. The FAA permits courts to vacate arbitration awards that are a manifest disregard of the law.

57. Section 302(a) of the LMRA, 29 U.S.C. § 186(a), prohibits payments of value from an employer to a labor organization.

58. Section 302(c) of the LMRA, 29 U.S.C. § 186(c), contains exceptions to the prohibition in Section 302(a), one of which allows payments to a multi-employer health and welfare fund, but only in certain specific circumstances.

59. Under Section 302(c)(5) and its proviso (B) of the LMRA, 29 U.S.C. § 186(c)(5) and (c)(5)(B), payments by an employer may be made to a multi-employer trust fund equally administered by both the employer and the union, but the receipt of payments by a multi-employer trust fund is forbidden unless "the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon …."

60. Section 302 of the LMRA sets forth an explicit, well-defined and dominant public policy and legal principle.

61. For the Fund to increase health care contribution rates for the Post-Gazette for 2018 or subsequent years, Section 302 of the LMRA requires a written agreement with the Post-Gazette, specifying in detail the basis on which the increased contributions are to be made.

62. The Agreement includes no written provision setting forth the basis for the Fund to increase contribution rates after 2017.

63. The trustees of the Fund may not unilaterally increase rates without the agreement of the Post-Gazette.

64. There is no "savings" clause in the Agreement authorizing the Fund to increase contribution rates after 2017.

65. The Post-Gazette is not bound by and has not agreed to any trust agreement, participation agreement, or subscription agreement authorizing the Fund to increase contribution rates after 2017.

66. An arbitration award contrary to Section 302 of the LMRA is a manifest disregard of the law.

67. The Post-Gazette presented the Arbitrator with evidence and argument concerning Section 302 of the LMRA during the arbitration hearing and subsequent briefing.

68. The Arbitrator understood that Section 302 of the LMRA controlled the outcome of the Award.

69. The Arbitrator's Award directed the Post-Gazette "to pay the amount necessary to maintain the specific health insurance benefit levels set forth therein (ie., all increases that may be required to keep the contractual level of benefits), subject to and until a new collective bargaining agreement is negotiated and reached between the parties."  (Ex. C, p. 20).

70. By requiring the Post-Gazette to increase its contributions to the Fund for years after 2017 and imposing a prospective financial obligation on the Post-Gazette without a written agreement setting forth a detailed basis for such increases, the Award requires the Post-Gazette to violate the express proscriptions of Section 302 of the LMRA.

71. Despite the Arbitrator's knowledge of Section 302 of the LMRA, the Award is contrary to the LMRA.

72. The Arbitration Award must be vacated because it is a manifest disregard of the law.

### Count V

Violation of Section 301 of the LMRA and FAA – The Arbitrator's Award Fails to Draw its Essence From the Language of the Agreement and the Arbitrator Exceeded His Authority Under the Agreement in Issuing the Award

73. The Post-Gazette repeats and realleges paragraphs 1-72.

74. Section 301 of the LMRA permits a court to vacate an arbitration award where the arbitrator's decision does not draw its essence from the language of the agreement and where the arbitrator exceeds their authority in issuing the award.

75. The Agreement provided for specific contribution rates to be paid by the Post-Gazette to the Fund in 2015, 2016 and 2017.

76. The Agreement includes no written provision setting forth the basis for the Fund to increase contribution rates after 2017.

77. The Agreement's Adjustment of Disputes provision provides that the "…[t]he arbitrator shall have no power to add to, subtract from, modify or amend any provision of this Agreement…." (Ex. A, Article XVI, Section 7).

78. The Arbitrator's Award directed the Post-Gazette "to pay the amount necessary to maintain the specific health insurance benefit levels set forth therein (ie., all increases that may be required to keep the contractual level of benefits), subject to and until a new collective bargaining agreement is negotiated and reached between the parties."  (Ex. C, p. 20).

79. There is no language in the Agreement supporting the Award.

80. The Arbitration Award adds language to the Agreement by requiring rate increases and obligations not contained in the Agreement.

81. The Arbitration Award must be vacated because the Arbitrator exceeded his authority under the Agreement by adding language to the Agreement.

82. The Arbitration Award must be vacated because it does not draw its essence from the language of the Agreement.

WHEREFORE, the Post-Gazette respectfully requests:

A.  The Court enter an Order vacating the Arbitration Award;

B.  The Court enter an Order enjoining the enforcement of the Arbitration Award; and

C.  The Court grant such other declaratory, equitable, or legal relief as this Court may deem just and proper.

Respectfully submitted,

By: */s/ Brian M. Hentosz*
Terrence H. Murphy
PA ID No. 36356
tmurphy@littler.com

Brian M. Hentosz
PA ID No. 317176
bhentosz@littler.com

LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
Ph: 412.201.7676/7621
Fax: 412.291.3373

Douglas R. Pierce, Esq.
*(pending pro hac vice admission)*
Mark E. Hunt, Esq.
*(pending pro hac vice admission)*
KING & BALLOW
315 Union Street
Suite 1100
Nashville, TN 37201
ce@kingballow.com
mhunt@kingballow.com
Ph: 615.259.3456

*Attorneys for Defendant
PG Publishing, Co., Inc. d/b/a
Pittsburgh, Post-Gazette*

Dated: February 14, 2020